UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

FRANCIS AUSTIN,

                Plaintiff,

       -v-

FORDHAM UNIVERSITY, *et al.*,

             Defendants.

</td></tr>
</table>

21-CV-6421 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Francis Austin brings suit against Fordham University, along with university administrators Kathryn J. Rodgers, Thomas Dejulio, and Carolyn Mooney (jointly, "Defendants"), alleging conduct in violation of Title IX of the Education Amendments of 1972, as well as state-law fraud. Austin's claims stem from his August 15, 2012 dismissal from the Naval Reserve Officer Training Corps (NROTC) program located at Fordham.

Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Austin's claims as time-barred, or in the alternative, insufficient to state a claim for relief. Because each of Austin's claims is time-barred and not subject to tolling, Defendants' motion to dismiss is granted.

## I.    Background

The following facts, drawn from Plaintiff's First Amended Complaint, are presumed true for the purpose of this motion. (*See* Dkt. No. 24.) Because the factual allegations are voluminous (972 paragraphs running nearly 200 pages), the following summary is not intended to be comprehensive.

A.      **The Parties**

In September 2009, Plaintiff Francis Austin enrolled at Fordham University as a student and as a participant in its NROTC program.  (*Id.* ¶ 9.)  Austin identifies as a gay man.  *Id.*  At the time he enrolled, the U.S. military still followed a strict "Don't Ask, Don't Tell" policy.  (*Id.* ¶ 10.)  Any servicemember who openly identified as gay or engaged in any sexual activity with a person of the same gender would be expelled from the military.  (*Id.* ¶ 11.)  At the time of his enrollment, Plaintiff also requested and received academic accommodations from Fordham's Office of Disability Services.  (*Id.* ¶ 100.)  In support of his request for accommodations, Plaintiff's high school sent Fordham records relating to his learning difficulties (referenced in the Amended Complaint as the "New Trier Report").  (*Id.* ¶¶ 200-202.)

During the events in question, defendant Kathryn J. Rodgers served as Fordham's Title IX officer; defendant Thomas Dejulio as its General Counsel; and defendant Carolyn Mooney as its Director of the Office of Disabilities Services.  (*Id.* ¶¶ 28, 43, 45.)

B.      **Fordham's Relationship to the NROTC Program**

Fordham's relationship with the Department of Defense and the Department of the Navy is governed by a 1985 contract referred to as the "Cross-Town Agreement."  (*Id.* ¶ 56.)  Through the Cross-Town Agreement, the Naval Service Training Command authorizes Fordham to offer the NROTC program in exchange for federal funding.  (*Id.* ¶¶ 59-60.)  Fordham oversees NROTC enrollment, course registration, and administration. (*Id.* ¶ 61.)  Per Fordham's policies, NROTC instructors received faculty scholarship benefits. (*Id.* ¶¶ 74-76.)

The terms of the Cross-Town Agreement would become key to Plaintiff's understanding of Fordham's role in investigating his sexual assault claim.  (*See, e.g.*, *id.* ¶ 629.)  By July 2012, Rodgers informed Plaintiff that there was a 1993 Cross-Town Agreement that superseded the

1985 version.  (*Id.* ¶ 413.)  Under the purported 1993 Agreement, "Fordham did not receive payments or federal funding directly from the U.S. Navy."  (*Id.*)  As represented to Plaintiff, the 1993 Agreement incorporated the "Don't Ask, Don't Tell" policy and stated that the U.S. military had exclusive jurisdiction over sexual assault allegations in the NROTC program. (*Id.* ¶ 629.)

### C.     The 2012 Sexual Assault

During Plaintiff's sophomore year at Fordham, his assigned roommate was Patrick X. Sweeney, a fellow midshipman and NROTC member.  (*Id.* ¶ 12.)  Plaintiff endured constant verbal harassment from Sweeney.  (*Id.* ¶¶ 146-47.)  During the summer of 2010, Sweeney gained possession of Plaintiff's medical records and refused to return them, threatening that he would disclose Plaintiff's disability accommodations to expose him as "a liar."  (*Id.* ¶ 136, 146-48.) The verbal abuse then became physical: Sweeney raped Plaintiff in his dorm room on February 11, 2011.  (*Id.* ¶ 152). The physical and verbal abuse continued thereafter.  (*Id.* ¶ 156.)  Plaintiff did not immediately report the sexual assault or physical abuse because the "Don't Ask, Don't Tell" policy was still in place, and he believed that he would be expelled if he filed a report.  (*Id.* ¶ 168.)

### D.     Drug Testing and Subsequent Investigation

In July 2010, Plaintiff began taking Vyvanse, a prescription medication to treat exhaustion and sleep difficulties.  (*Id.* ¶ 105.)  He disclosed the prescription to the NROTC program when he enrolled, and it was listed in his medical records.  (*Id.* ¶ 106.)

On April 11, 2012, Plaintiff took a urinalysis test as part of the standard requirements of the NROTC program.  (*Id.* ¶ 174.)  The test detected the Vyvanse in his system.  (*Id.* ¶¶ 178-79.) Though a Navy doctor cleared Plaintiff of any inference of drug abuse, *id.* ¶ 180, Fordham

3

NROTC personnel began to question his use of academic accommodations. (*Id.* ¶ 182.) During this conversation, Plaintiff reported for the first time that he had been sexually assaulted. *Id.* The NROTC instructor responded by insulting Plaintiff based on his use of medication and his perceived sexual orientation. (*Id.* ¶¶ 184-85.)

On May 1, 2012, Fordham NROTC began a formal investigation into Plaintiff regarding his "drug abuse." (*Id.* ¶ 186.) On May 8, 2012, Plaintiff reported the sexual assault and threats from Sweeney to a different NROTC instructor, who responded that the school would need to investigate Plaintiff's drug "dependency." (*Id.* ¶¶ 190, 196.)

On May 8, 2012, Plaintiff contacted Defendant Mooney, director of the university's Office of Disabilities Services, to request copies of all the documents relating to his academic accommodations. (*Id.* ¶ 197.) Mooney sent him the 2006 New Trier Report. (*Id.* ¶ 200.) According to the Complaint, what Mooney produced was not the original sent from Plaintiff's high school to Fordham, but instead an altered version containing changes designed to show that Plaintiff had "severe and disqualifying learning disabilities." (*Id.* ¶ 204.) Plaintiff refers to this version of the document as the "Manufactured and Altered New Trier Report." (*E.g.*, *id.* ¶ 247.)

According to Plaintiff, Fordham's investigation into his purported learning disabilities was pretext to expel him from the NROTC program — in retaliation for reporting the rape. (*Id.* ¶ 209.)

Fordham NROTC administrators then sent the Manufactured and Altered New Trier Report to the Navy's Bureau of Medicine and Surgery. (*Id.* ¶ 27.) The Bureau approved the Fordham NROTC to take further administrative action against Plaintiff. (*Id.* ¶ 241.)

### E.       Administrative Contact and Eventual Dismissal

On May 30, 2012, Plaintiff spoke on the phone with Defendant Rodgers and described his prior attempts to report the assault.  (*Id.* ¶ 287.)  Rodgers told Plaintiff that Fordham had no authority to investigate because it was a military matter.  (*Id.* ¶¶ 300-01.)  Defendant Mooney made a similar representation to Plaintiff.  (*Id.* ¶¶ 310-11.)

Defendants made contradictory statements about what Fordham would do next.  In a July 3, 2012 phone call, Rodgers told Plaintiff that she would "have to open an investigation into everything [Plaintiff] disclosed," *id.* ¶ 338, but also told him to remove the rape allegation from a chronology of events that he had prepared to aid the investigation.  (*Id.* ¶ 356.)  Rodgers stated that her office had no jurisdiction over the rape allegation, *id.* ¶ 351, but also said she had prepared a Title IX investigation for the review of Fordham's president and would have to report the assault claim to the Department of Education.  (*Id.* ¶¶ 357; 418.)

On October 10, 2012, Rodgers sent Plaintiff a letter summarizing the findings from the investigation into Plaintiff's termination from the NROTC program.  (*Id.* ¶ 491.)  The premise of the letter was that Plaintiff was terminated for his use of prescription medication and disability accommodations.  *Id.*  It did not mention the sexual assault, any Title IX investigation, or Plaintiff's claims about retaliation.  *Id.*  Rodgers stated that "NROTC personnel are not Fordham employees," and that the University had no authority in the disenrollment proceedings.  *Id.*

Plaintiff then shifted his efforts elsewhere, with several Congressional inquiries into the matter being pursued by Plaintiff over several years.  (*Id.* ¶ 522 *et seq.*)

Plaintiff was formally disenrolled from the NROTC program on August 15, 2012.  (*Id.* ¶ 462.)

### F.   October 26, 2020 Phone Call with Margaret T. Ball

On October 26, 2020, Plaintiff spoke with Margaret T. Ball, Fordham's general counsel. After hearing Plaintiff's recounting of events, Ball told Plaintiff that Fordham did in fact have legal authority over his claims because the NROTC instructors were Fordham faculty members. (*Id.* ¶¶ 590-605.)  Before this call, Plaintiff states that he "had no reason to suspect [Fordham] . . . of fraud or fraudulent conduct." (*Id.* ¶ 606.)  Ball also related that Fordham never reported the rape to the Department of Education, *id.* ¶ 615, and that there was no 1993 Cross-Town Agreement at all.  (*Id.* ¶ 629.)

Plaintiff subsequently filed suit in November 2021.

## II.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (citation and footnote omitted).

And "[a]lthough the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015).  Timeliness is "material when testing the sufficiency of a pleading."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008).

## III.    Discussion

Defendants argue that the Court should dismiss this case because Austin was on notice about his potential legal claims by 2012, meaning that even the most generous of the relevant statutes of limitations has run.

Austin argues that, due to Defendants' actions, he only learned about Fordham's potential liability in 2020 — meaning that the clock did not start until then.  Further, he argues that even if the statutes of limitations have run, the clock should be tolled based on Fordham's allegedly deceitful actions.[1]

### A.    Title IX: Violation and Retaliation

### 1.    Statute of Limitations

Plaintiff alleges that Fordham and its administrators are liable to him under Title IX because (1) they failed to carry out a proper Title IX investigation after he reported the sexual assault and (2) they launched an investigation into Plaintiff's valid disability accommodations in retaliation for his reporting the assault.  Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . . " 20 U.S.C. § 1681(a).

Because Congress did not provide a statute of limitations for Title IX claims, courts "apply the most appropriate or analogous state statute of limitations." *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (*per curiam*).  The Second Circuit has held that "Title IX claims are most closely analogous to personal injury actions," applying the three-year general personal

---

[1] Austin seeks leave from the Court to file a sur-reply memorandum of law in opposition to Defendants' motion to dismiss.  (Dkt. No. 41.)  That request is granted.  The Court's decision therefore takes into account the content of Austin's sur-reply.

injury statute of limitations found in N.Y. C.P.L.R. § 214(5).  *Id.* (citations omitted).  Thus, a three-year statute of limitations applies to counts one and two of the complaint.

To determine whether Austin's claims are timely, the Court must (i) determine the date on which the limitations period began running (the date of accrual) and (ii) determine whether the limitations period was tolled at any point.

## 2.    Claim Accrual

The limitations period begins running on the date a claim accrues.  Federal law determines the date on which a federal claim accrues.  *Best v. Bell*, 2014 WL 1316773, at *5 (S.D.N.Y. Mar. 28, 2014).

Austin argues that though Defendants' key actions occurred in 2012, his Title IX claim did not accrue until October 26, 2020.  (Dkt. No. 24 ¶¶ 828-40.)  In general, a federal claim accrues "when it comes into existence," or in other words, when a "plaintiff has a complete and present cause of action."  *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 9 (2d Cir. 2014). Defendants argue for application of this "standard accrual rule."  (Dkt. No. 34 at 13.)  Plaintiff instead asks the Court to apply the discovery accrual rule, which provides that, "in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit."  (Dkt. No. 36 at 28 (citing *Barrett v. United States*, 689 F.2d 325, 327 (2d Cir. 1982))).

As Plaintiff notes, the Second Circuit has indicated that the federal discovery accrual rule "generally applies when the statute is silent on the issue."  *Twersky*, 579 Fed.Appx.7 at *9 (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012)).  Though the Second Circuit has

not definitively resolved the issue, the Court assumes that the more generous discovery rule applies to this Title IX action.

Based on the allegations, it is clear that Plaintiff could have discovered that there was no valid Title IX investigation as early as 2012.  In the Title IX context, the discovery accrual rule triggers when a plaintiff receives "information sufficient to put them on at least inquiry notice as to the school's awareness of and indifference to the abusive conduct" at issue.  *Twersky*, 579 Fed.Appx.7 at *9 (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)).  Plaintiff reported the assault directly to Rodgers for the first time on May 30, 2012.  (Dkt. No. 24 ¶ 287.)  By July 25, 2012, Rodgers told Plaintiff that she had completed a written report of Plaintiff's allegations and was required to report the assault to the U.S. Department of Education.  (*Id.* ¶¶ 416-18.)  But Rodger's October 12, 2012 findings addressed only Plaintiff's allegations regarding improper termination based on his disability accommodations and improper hazing during the NROTC indoctrination period.  (*Id.* ¶ 491.)  It did not mention Plaintiff's report of sexual assault.  (*Id.*)  At that point, Plaintiff could have inquired with Rodgers about the status of his Title IX claim and potentially learned about the university's failure to conduct an investigation or fulfill its reporting obligations.[2]

---

[2] Plaintiff asks the Court to adopt the Sixth Circuit's reasoning in a recently decided Title IX action, *Snyder-Hill v. Ohio State University*. 2022 WL 4233750 (6th Cir. Sept. 14, 2022).  There, the court held that though plaintiffs' abuse claims dated back decades, they were not time barred under the discovery accrual rule.  That case is distinguishable from this one.  First, the Sixth Circuit concluded that those plaintiffs adequately alleged that even if "they had investigated the abuse, they would not have discovered that Ohio State injured them" because the university actively engaged in a "decades-long cover up" that involved destroying documents and concealing abuse.  *Id.* at *14.  The facts as pleaded here do not create a comparable level of certainty about whether Plaintiff would have been unable to discover Fordham's wrongful acts.  Second, the Sixth Circuit explicitly distinguished pre-assault Title IX claims from post-assault claims — indicating that the latter are more likely to accrue sooner.  *Id.* at *12.  ("These cases illustrate that a pre-assault heightened-risk claim may not accrue until well after a post-assault

In conclusion, Plaintiff's claim against Fordham for violation of its Title IX reporting requirements accrued as early as October 2012, and certainly no later than 2013.  Because the statute of limitations for Title IX claims is three years, the claim is untimely.

Relatedly, Plaintiff alleges retaliation in violation of Title IX.  Such a claim requires that a plaintiff show: "(1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action."  *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011).

Applying the more lenient discovery rule to the retaliation claim as well, the Court concludes that Plaintiff's claim accrued when he discovered or could have discovered that Fordham administrators were taking adverse action against him based on protected activity. Plaintiff alleges that Fordham's retaliatory actions began in April 2012, after he reported the rape for the first time.  (Dkt. No. 24. ¶ 185.)  Therefore, Plaintiff's retaliation claim also accrued in 2012 or 2013, was subject to a three-year statute of limitations, and is not timely.

Because neither Title IX claim is timely, Defendants must prevail on their statute of limitations defense unless Plaintiff can plausibly allege that both claims fall within an exception to the statute of limitations — namely, the concept of equitable tolling.

### 3.    Equitable Tolling

The parties disagree as to whether federal equitable tolling doctrine or New York's doctrine on equitable estoppel applies to the Title IX claims.[3]  (*See* Dkt. No. 36 at 14-15; Dkt.

---

Title IX claim.  A plaintiff will typically know or have reason to know that a school mishandles their own report of an assault close to the time of the school's inadequate response.").

[3] Plaintiff asserts that Defendants waived their arguments against applying New York tolling doctrine because they did not discuss the elements of New York equitable estoppel in their motion to dismiss.  (Dkt. No. 36 at 16.)  The Court disagrees.  The Amended Complaint was not

No. 40 at 4.)  Where a federal claim borrows its limitations period from New York law, "New York tolling principles apply unless they are inconsistent with federal law."  *Best*, 2014 WL 1316773, at *5 (citing *Bd. Of Regents v. Tomanio*, 446 U.S. 478, 483-86 ("'[B]orrowing' logically include[s] rules of tolling . . . .")).

Federal tolling principles conflict with those of New York.  This Court has explained that equitable tolling has two elements under federal law: (1) "(successful) concealment by defendant and diligence by plaintiff"; and (2) "that a defendant who contrives to commit a wrong in such a manner as to conceal the very existence of a cause of action, and who misleads plaintiff in the course of committing the wrong, may be found to have concealed the wrong."  *Fertitta v. Knoedler Gallery, LLC*, No. 14-CV-2259, 2015 WL 374968, at *9 (S.D.N.Y. Jan. 29, 2015) (citing *Hobson v. Wilson*, 737 F.2d 1, 33 (D.C. Cir. 1984), *overruled in part on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)).  The second prong of the federal equitable tolling doctrine thus covers situations where the defendant's wrongful act and the steps the defendant took to conceal the act are one and the same.  *See, e.g.*, *Fertitta*, 2015 WL 374968, at *9 (S.D.N.Y. Jan. 29, 2015) (concluding that federal tolling doctrine encompassed "self-concealing" fraud while New York doctrine did not).

In contrast, under New York law, "equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying substantive cause of action."  *Kaufman*, 760 N.Y.S.2d at 167.  In other words, "[f]or the doctrine to apply, a plaintiff may not rely on the same act that

---

clear as to whether Plaintiff intended to invoke New York or federal tolling doctrine; Plaintiff clarified his argument only in his opposition to the motion to dismiss.  It would be inequitable to penalize Defendants for Plaintiff's failure to clearly define which equitable tolling standard he was referring to in the Amended Complaint.

forms the basis for the claim — the later fraudulent misrepresentation must be for the purpose of concealing the former tort." *Fertitta*, 2015 WL 374968 (citing *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491 (2007)).

Count One — violation of Title IX — implicates this conflict between federal and New York law as to a defendant's "self-concealing" wrongful act. This is because Plaintiff identifies Fordham's statements that it was conducting a valid Title IX investigation as the underlying misrepresentation. That misrepresentation is the same act that forms the basis of Plaintiff's claims for violation of Title IX. As a result, the federal equitable tolling rule applies.

In order for equitable tolling to apply under federal law, "a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003), as amended (July 29, 2003) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). *See also A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) ("equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstance[s]") (citation omitted).

Taking the facts of the Amended Complaint as true, Plaintiff must plausibly plead that (1) he acted with reasonable diligence during the time between the Title IX violation and the October 26, 2020 conversation with Margaret Ball and (2) this case presents extraordinary circumstances. Plaintiff's complaint fails on the first prong of the test. Rodgers reported the findings of her investigation in October 2012, describing the university's conclusions as to seemingly all matters *except* the fate of the Title IX claim and the sexual assault claim. A

reasonably diligent plaintiff would have taken those glaring omissions as cause for alarm.  Even if Fordham obfuscated the facts as to whether it or the Navy had authority over the NROTC program, Plaintiff still had sufficient information at this point to be on notice that a potential Title IX violation was on the table.

On the other hand, the Title IX retaliation claim was not self-concealing.  The underlying act (the retaliatory investigation) was separate from any further acts Fordham took to conceal Plaintiff's cause of action.  It therefore does not implicate the contradiction described above between federal and New York tolling doctrine.  New York law applies.

Under New York law, equitable estoppel applies where a "plaintiff was induced by fraud, misrepresentations, or deception to refrain from filing a timely action."  *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006) (citing *Simcuski v. Saeli*, 44 N.Y.2d 442, 449 (1978)).  A plaintiff "must demonstrate reasonable reliance on the defendant's misrepresentations."  *Zumpano*, 6 N.Y. 3d at 674.  It is "fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." *Id*.

Plaintiff's theory of liability is that Fordham misrepresented its responsibility for the investigation into his disability accommodations: that though the investigation was carried out by NROTC personnel, those individuals were actually employed directly by the university and fully subject to the university's remedial authority.  And because the university repeatedly disclaimed that it had any authority over the disenrollment proceeding, Plaintiff was not able to file a timely action until the 2020 disclosures by Ball.  (*See, e.g.*, Amended Compl. ¶¶ 491, 523.)

Plaintiff's claim does not satisfy the requirements for estoppel under New York law because he has not demonstrated reasonable reliance on Fordham's misrepresentations.  By July

2012, plaintiff had obtained a copy of the 1985 Cross-Town Agreement and requested a copy of the alleged 1993 agreement through an aide from Senator Mark Kirk's office. (*Id.* ¶¶ 389-90.) After that request, neither the Navy nor Fordham ever provided a copy of the purported 1993 agreement. (*Id.* ¶ 390.)  While Fordham administrators represented that there was a new Cross-Town Agreement, Plaintiff has not plausibly alleged that the school engaged in specific subsequent action that prevented him from discovering that the 1993 Agreement did not exist.  In other words, Plaintiff does not successfully invoke Fordham's failure to provide the 1993 Agreement as evidence of his reasonable reliance on Fordham's misrepresentations.  To the contrary, the university's silence should have put Plaintiff on notice of the need to determine whether there was, in fact, a 1993 agreement and what it actually said.

In conclusion, Counts One and Two must be dismissed because they are time-barred and do not merit equitable tolling under federal law.

### B.    Fraud Claims

The remaining counts concern Plaintiff's state law claims for fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, breach of fiduciary duty, tortious interference with contract, and unjust enrichment.

#### 1.    Statute of Limitations

In New York, the statutes of limitations for Counts Three and Five, fraudulent misrepresentation and fraudulent concealment, are "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." *Deans v. Bank of Am.*, No. 10 CIV. 9582, 2011 WL 5103343, at *3 (S.D.N.Y. Oct. 27, 2011) (citing N.Y. C.P.L.R. § 213(8)); *Kampuries v. Am. Honda Motor Co.*, 204 F. Supp. 3d 484, 489 (E.D.N.Y. 2016).  The statute of limitations for

Count Four, negligent misrepresentation, is six years.  *Basso v. New York Univ.*, No. 16 CIV. 7295, 2020 WL 7027589, at *11 (S.D.N.Y. Nov. 30, 2020).

The statutes of limitations for Counts Six, Seven, and Nine are set at three years.  *See Malmsteen v. Berdon*, *LLP*, 477 F. Supp. 2d 655, 666 (S.D.N.Y. 2007) (three-year statute of limitations for breach of fiduciary duty where monetary relief is sought); *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 252 (S.D.N.Y. 2002) (three years for tortious interference with contract); *Malmsteen*, 477 F. Supp. 2d at 667 (three years for unjust enrichment).

Finally, the statute of limitations for Count Eight, intentional infliction of emotional distress, is one year.  *Rivera v. United States Citizenship & Immigr. Servs.*, No. 19 Civ. 3101, 2020 WL 4705220, at *13 (S.D.N.Y. Aug. 12, 2020).

### 2.    Accrual

#### a.    Count Three: Fraudulent Misrepresentation

On Count Three, Plaintiff alleges that Fordham mispresented three facts: (1) that it had conducted a legitimate Title IX investigation; (2) that the U.S. military had "exclusive authority and jurisdiction over Plaintiff's rape and sexual assault allegations" and had no power to take any remedial action; and (3) that the "Manufactured and Altered New Trier Report" was the Original 2006 New Trier Report.  (Dkt. No. 24 ¶ 853.)

As an initial matter, because Fordham is alleged to have made these representations in 2012, the fraudulent misrepresentation claim accrued then.  To argue that the statute of limitations did not begin to run until much later, Plaintiff alleges that he could not with reasonable diligence have discovered the truth of any of these three misrepresentations until the October 26, 2020 conversation with Margaret Ball.  (*Id.* ¶ 947.)

The "reasonable diligence" standard turns on "whether the plaintiff was possessed of knowledge of facts from which [the fraud] could be reasonably inferred." *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532 (2009) (citing *Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321, 326 (1957)) (internal quotation marks omitted).  More specifically, "[a] duty of inquiry arises when the facts would suggest fraud to a person of ordinary intelligence." *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 477 (S.D.N.Y. 2014). "If the plaintiff makes no inquiry once the duty to inquire arises, knowledge will be imputed as of the date the duty arose." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361–62 (2d Cir. 2013) (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir.2005)) (internal quotation marks omitted).  If, however, "some inquiry" is made, "the court will impute knowledge of what [a plaintiff] in the exercise of reasonable diligence[ ] should have discovered concerning the fraud, and in such cases the limitations period begins to run from the date such inquiry should have revealed the fraud." *Cohen*, 711 F.3d 353 (citing *Lentell*, 296 F.3d at 161)*.* While determining whether a plaintiff had sufficient facts to be on inquiry notice is "often inappropriate for resolution on a motion to dismiss," a court may do so where the necessary facts "can be gleaned from the complaint and papers." *Cohen*, 711 F.3d 362; *see also Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 277 (S.D.N.Y. 2019).

As to Fordham's first misrepresentations — about the Title IX investigation — Plaintiff pleads that he "did not know of any facts which would have suggested to a person of ordinary intelligence the probability that he had been defrauded" by Defendants.  (Dkt. No. 24 ¶ 947.) But taking Plaintiff's allegations as true, the Court concludes that he does not plausibly allege that he was ignorant as to the likelihood that Fordham was being dishonest about its actions.  A duty of inquiry arose — at the latest — when Defendant Rodgers issued her findings on October

10, 2012 and did not address the status or results of the Title IX investigation. (*Id.* ¶ 491). At that point, a person of ordinary intelligence would have been on alert as to the possibility that Fordham had not fulfilled its promise to conduct a legitimate investigation. Plaintiff did continue to contact university officials about the circumstances of his disenrollment from the NROTC program, *id.* ¶¶ 954-57. But Plaintiff does not allege that he inquired into the status of the *Title IX investigation* between the October 10, 2012 disclosure from Rodgers and the 2020 conversation with Margaret Ball. (*See id.* ¶¶ 533, 544, 561).

As to Fordham's second misrepresentation, about its authority to investigate the assault, the question of when Plaintiff's duty of inquiry was triggered turns on his requests to view the purported 1993 Cross-Town Agreement. By July 2012, Fordham had failed to respond to a direct request to provide a copy of the document. (*Id.* ¶ 346, 415.) Plaintiff then inquired into the matter by directing Senator Kirk's office to ask the Navy for a copy of the document. (*Id.* ¶ 390.) It never provided one. In the months of silence from Fordham following Plaintiff's July 2012 request, a reasonably diligent plaintiff would have made a further attempt to definitively resolve whether the document existed.

Finally, as to Fordham's third misrepresentation — about the New Trier Report — the Complaint alleges that Plaintiff received a copy of the altered report from Defendant Mooney on May 8, 2012. (*Id.* ¶ 469). From that time, Plaintiff was on inquiry notice as to the fact that the document had been altered. Plaintiff argues that he had never seen the original report and thus could not have been aware of Fordham's alterations. (Dkt. No. 41-1 at 10). But Plaintiff still should have been on inquiry notice based on the fact that the contents of the Manufactured and Altered Report did not match his lived experience. For example, the Manufactured and Altered Report created an impression that Plaintiff "suffered from severe and disqualifying learning

disabilities" and included content "fabricated . . . from whole cloth to make it appear as if Plaintiff conformed to certain negative homosexual stereotypes" that would have barred him from admission to the Navy.  (Dkt. No. 24 at ¶ 258).  The latest date, then, that the duty of inquiry could have arisen was in May 2012.

With each element of the fraudulent misrepresentation claim having accrued in 2012, and with the relevant statute of limitations being two years, the fraudulent misrepresentation claim is time-barred.

### b.    Count Four: Negligent Misrepresentation

Plaintiff's claim for negligent misrepresentation is based on the same three facts as his claim for fraudulent misrepresentation.  (*Id.* ¶ 866).  Because the statute of limitations is six years, Plaintiff's claim must have accrued after 2015 to be timely.  A claim for negligent misrepresentation accrues at the time of injury.  *Marchig v. Christie's Inc.*, 430 F. App'x 22, 25 (2d Cir. 2011).  As analyzed above, Fordham made each of the disputed representations in 2012. Therefore, Plaintiff's claim for negligent misrepresentation is time-barred.

### c.    Count Five: Fraudulent Concealment

Plaintiff alleges fraudulent concealment based on Defendants' failure to disclose material facts relating to six topics: (1) "all aspects of Plaintiff's enrollment and participation in Fordham's NROTC Program"; (2) Fordham's Title IX authority to investigate and order punitive remedies for the sexual assault; (3) the existence of the Cross-Town Agreements; (4) the existence of any reports generated by Fordham in connection to the sexual abuse allegations; (5) the existence of any NROTC Medical Records in Defendants' possession pertaining to Plaintiff; and (6) the existence of any "false, fraudulent, or materially altered documents" in connection with Plaintiff's "records and/or any aspect of his participation in Fordham's NROTC program."

(Dkt. No. 24 ¶ 876.)  A claim for fraudulent concealment requires a showing of the same legal elements as a claim for fraudulent misrepresentation, "with the additional requirement that the plaintiff must demonstrate that the defendant had a duty to disclose material information." *Nealy v. United States Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008).  As noted above, a plaintiff must bring a fraudulent concealment claim within six years of accrual or two years of the date he could have discovered the fraud with reasonable diligence — whichever is later.

In light of the foregoing, Plaintiff's claims are time barred.  Plaintiff's argument for timeliness rests on the notion that he could have discovered the fraud no earlier than 2020.  But the facts as pleaded in the Amended Complaint indicate that, by 2012, Plaintiff had sufficient awareness of Fordham's non-disclosures on each of the six elements listed above to have been aware of his potential cause of action.  Count Five is therefore time-barred.

### d.    Counts Six, Seven, and Nine

Plaintiff's claims for breach of fiduciary duty, tortious interference with contract, and unjust enrichment are similarly time-barred.  Because each has a statute of limitations of three years, Plaintiff's claim would have had to accrue after 2018 to be timely.  Under New York law, actions for breach of fiduciary duty accrue at the moment of breach.  *Bd. of Trs. v. BNY Mellon, N.A.*, 2012 U.S. Dist. LEXIS 132724, at *21 (S.D.N.Y. Sep. 10, 2012).  Actions for tortious interference with contract accrue "when the defendant performs the alleged interference." *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 257 (S.D.N.Y. 2012).  Actions for unjust enrichment accrue "upon the occurrence of the wrongful act giving rise to a duty of restitution." *City of Almaty v. Ablyazov*, No. 15 Civ. 5345, 2018 WL 1583293, at *4 (S.D.N.Y. Mar. 27, 2018) (Nathan, J.).

Plaintiff's allegations on these counts all accrued in 2012.  As related to the breach of

fiduciary duty, Fordham sent the Navy "false and fraudulent documents . . . with respect to the

issue of Plaintiff's potential disenrollment" from the NROTC program in 2012.  (Dkt. No. 24

¶ 891).  Fordham "improperly procured the breach of contract between Plaintiff and the U.S.

Navy" when Plaintiff was disenrolled from Fordham's NROTC program on August 15, 2012.

(*Id.* ¶ 462).  The statute of limitations began to run on the unjust enrichment claim on the same

date.  Because each of these three claims accrued by 2012, they were time-barred after 2015.

### 3.      Equitable Estoppel

Plaintiff argues that though each of his fraud claims is time-barred, they should be

equitably tolled under New York law.[4]  As noted above, to successfully plead equitable estoppel

under New York law, a plaintiff must show that Defendants engaged in "subsequent and

specific" actions that prevented him from bringing suit.  *Zumpano*, 6 N.Y.3d at 674.  Plaintiff

fails to do so here.  Plaintiff does not identify any specific actions that Fordham or its

administrators took after 2012 that prevented him from discovering that he had injuries sounding

in common law fraud.  Plaintiff alleges that after the Fordham NROTC disenrolled him 2012, he

focused his efforts on seeking justice through eight congressional inquiries led by Senators Mark

Kirk, Tammy Duckworth, and Deb Fischer.  (Dkt. No. 24 ¶ 522-23).  According to the

Complaint, the first inquiry began in 2012, when Senator Kirk's office attempted to contact the

Navy Service Training Command.  (*Id.* ¶ 527).  Between 2012 and 2020, the pattern repeated,

with each senator's office attempting to further its investigation by liaising with the Navy and/or

---

[4] Plaintiff also indicates that the state law fraud claims should be tolled because Fordham's actions were self-concealing.  (Dkt. No. 24 ¶¶ 964-65 ("The Fordham Defendants' wrongful and fraudulent acts against Plaintiff were self-concealing . . . .")).  Because New York does not recognize self-concealing fraud, as discussed above, this argument is inapposite.

the Department of Defense. (*See generally id.* ¶¶ 528-74).  Plaintiff does not allege any specific

involvement or interference from Defendants during this period.  For that reason, Plaintiff cannot

invoke the state-law doctrine of equitable estoppel on Counts Three, Four, Five, Six, Seven, or

Nine.

### C.      Intentional Infliction of Emotional Distress

Plaintiff's final claim is for intentional infliction of emotional distress, which is governed

by a one-year statute of limitations.  *Rivera v. United States Citizenship & Immigration Servs.*,

2020 U.S. Dist. LEXIS 145858, at *34 (S.D.N.Y. Aug. 12, 2020) (citing N.Y. C.P.L.R. § 215)).

Where a plaintiff pleads emotional distress based on a defendant's "extreme and outrageous

acts," the statute of limitations begins to run at the time of defendant's "last tortious act."  *De*

*Santis v. City of N.Y.*, 2013 U.S. Dist. LEXIS 95169, at *18 (S.D.N.Y. July 8, 2013).  While

Plaintiff does not specifically identify Fordham's last tortious act, the primary events in this

matter occurred in 2012.  Using that as a marker, Plaintiff's claim was time-barred after 2013.

The only means to revive the intentional infliction of emotional distress claim would be

through state law equitable estoppel.[5]  That doctrine cannot apply here for the same reason it did

not apply to the fraud claims: Plaintiff does not plead any "subsequent and specific" actions that

Fordham or its administrators took after 2012 that prevented him from filing his claim in a timely

manner.

---

[5] Plaintiff also gestures toward fraudulent concealment as a basis for tolling the statute of
limitations on this claim.  (*E.g.* Dkt. No. 24 ¶ 970) ("[A]ll applicable statutes of limitation in this
action should be tolled on the basis of Defendants' fraudulent concealment . . . .")).  But
fraudulent concealment, by definition, requires a showing that a defendant kept a plaintiff from
discovering that he had a cause of action.  A plaintiff cannot simultaneously claim that a
defendant's actions caused him emotional distress *and* that he was not aware that he had a cause
of action against the defendant based on those actions.  In any event, Plaintiff does not plausibly
allege the requirements for fraudulent concealment as to this claim.

IV.     **Conclusion**

The Court does not discount the deeply disturbing nature of the facts, or the extent of Plaintiff's suffering, as alleged in this case.  But the Court is bound to strictly apply statutes of limitations.   The Supreme Court has counseled that "[p]rocedural requirements . . . are not to be disregarded by courts out of a vague sympathy for particular litigants . . . .  In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."  *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984).

For the reasons stated in this opinion, Defendants' motion to dismiss is GRANTED, and the complaint is dismissed with prejudice.[6]

The Clerk of Court is directed to terminate the following motions:

ECF 32:  Granted

ECF 41:  Granted

ECF 45:  Granted

ECF 48:  Denied as moot

ECF 53:  Denied as moot

---

[6] Plaintiff does not request leave to amend for the purpose of re-pleading the claims asserted in the Amended Complaint.  He does, however, request a preliminary conference with the Court regarding the implications of the newly enacted New York Adult Survivors Act on this case. (Dkt. No. 48.)  Because the Act will not go into effect until November 24, 2022, it has no bearing on the Court's decision on this motion to dismiss.  Further, the Court is not persuaded that the Act will have any impact on the statute of limitations and tolling analysis central to this opinion. Courts that considered revival claims under an analogous statute, the Child Victims Act, found that the Act did not extend the statute of limitations for federal § 1983 claims, which borrow from New York's general statute of limitations for personal injury actions.  *Boyle v. N. Salem Cent. Sch. Dist.*, No. 19 Civ. 8577, 2020 WL 2319116, at *3 (S.D.N.Y. May 11, 2020); *Coe v. Regan*, No. 19 Civ 5327, 2022 WL 467053, at *4 (E.D.N.Y. Feb. 3, 2022).  The Court concludes that the same reasoning and outcome apply in the Title IX context.

The Clerk is directed to enter final judgment for Defendants and close this case.

SO ORDERED.

Dated:   September 30, 2022
         New York, New York

_____
J. PAUL OETKEN
United States District Judge